

USA v. Dhanoolal
Case No. 1:22-cr-00063-RGA

March 10, 2023

Honorable Richard G. Andrews
United States District Judge
United States District Court
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

Re:   **United States v. Brendan Dhanoolal, 22-cr-00063-RGA**
      **Response to Sentencing Letter Submitted By United States**

Dear Judge Andrews:

The Defendant, Brendan Dhanoolal, respectfully submits this letter in response to the Sentencing Letter submitted in this matter by the United States on March 6, 2023 (the "U.S. Sentencing Letter").[1]

**Independent Audits of BOP Medical Facilities Support That Incarceration Would Unnecessarily Cause Serious Irreparable Harm To Mr. Dhanoolal.**

The United States has not offered evidence that the United States Bureau of Prisons ("BOP") can properly treat Mr. Dhanoolal. The best the United States is able to offer is an undocumented claim from Dr. Diane Sommer, a clinical director for the BOP, that the BOP can provide medical services for Mr. Dhanoolal, including dialysis. U.S. Sentencing Letter, page 2. However, the Government has offered no information about Dr. Sommer, including where she works within the BOP system, her professional background, or her medical practice area. Further, there is no evidence that Dr. Sommer has any experience or specialization in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Nor is there any evidence that she is aware of the details or complications of Mr. Dhanoolal's case or that she has knowledge of what his actual needs encompass.

However, based on several independent reviews of the BOP medical services, as well as a recent review by the Department of Justice Office of the Inspector General, there are many

---

[1] Defendant notes that the original deadline for the United States to file this Sentencing Letter was January 18, 2023. Instead of filing a Sentencing Letter, on January 18, 2023, the United States requested a continuance of the sentencing hearing date. After the Court agreed to continue the sentencing hearing to March 15, 2023, the revised deadline for the United States to file its Sentencing Letter was on or before March 3, 2023, three days before it was filed.

1775 Eye Street NW, Suite 1150 / Washington, DC 20006
Office: (202) 349-4033 / Fax: (877) TLG-7484 / THORNLAWGROUP.COM

reasons to find that incarceration is the worst place for Mr. Dhanoolal. "Fast forward to the reality of today, . . . the BOP is struggling to care for prisoners in its care."[2]

In March 2022, the Department of Justice Office of the Inspector General ("OIG") issued a report detailing numerous problems within the BOP medical facilities including, but not limited to: challenges in transporting inmates to appointments, lack of BOP staff available to transport inmates to medical appointments and treatments, lack of training for BOP staff, delays in the provision of healthcare to inmates, lack of systems to track or monitor inmate appointments, and the inability to determine whether inmates are receiving care within the required community standard.[3] Similarly, the OIG Audit found that the BOP did not have any mechanisms in place to monitor the timeliness or quality of medical services provided to inmates.[4] Other documented problems within the BOP include severe shortage of properly trained medical professionals and staff and failure to provide prescription medications.[5] One BOP facility reported having over 750 unfilled prescriptions in the first quarter of 2022.[6]

Further, despite the claims of Dr. Sommer, independent reviews of the BOP have found that it is unlikely that a BOP inmate will actually be considered for or receive a kidney transplant.

> Notably, there is no government mandate for transplant referral for prisoners with end-stage renal disease. Additionally, prisoners have poor access to transplantation and according to a recent report, only 19% of kidney transplant programs have included prisoners on their waitlists.

Madan Gowda, MD, et. al., *Kidney Transplant Program for Prisoners: Rewards, Challenges, and Perspectives*, Transplantation, Vol. 104, No. 10 (2020). Citing to Qazi Y. Mahajan, et. al., *A multinational study of kidney transplantation in inmates*, American Transplant Congress: D232 (2019).

> Despite a legal obligation to provide a community standard of care including the screening and treatment of individuals with [chronic kidney

---

[2] Walter Pavlo, *Federal Bureau of Prisons' Medical Care Falls Short Of It's Own Policy*, Forbes (Apr. 19, 2022), https://www.forbes.com/sites/walterpavlo/2022/04/19/federal-bureau-of-prisons-medical-care-falls-short-of-its-own-policy/?sh=1db567b15eab.

[3] U.S. Dep't of Justice, Off. of the Inspector Gen., *Audit of the Federal Bureau of Prisons Comprehensive Medical Services Contracts Awarded to the University of Massachusetts Medical School*, (2022) (the "OIG Audit") (https://oig.justice.gov/sites/default/files/reports/22-052.pdf ).

[4] *Id.*

[5] Pavlo, *supra* note 2.

[6] *Id.*

USA v. Dhanoolal
Case No. 1:22-cr-00063-RGA

disease], there is little evidence to suggest systematic efforts are in place [in the BOP] to address this prevalent, costly, and ultimately fatal condition.

Matthew Murphy, M.D., et. al., *Kidney Disease Among People Who Are Incarcerated*, Clin. J. Am. Soc. Nephrol., Vol 16 (Nov. 2021).

    According to the BOP, there are only seven federal medical centers ("FMC"), or facilities with the capability of providing medical services to inmates outside of routine basic treatments within the federal prison system.[7] None of the FMCs have the capability to perform kidney transplants.[8] Of the seven FMCs, only two have the ability to treat inmates with end-stage renal failure by offering dialysis. The two FMCs offering dialysis are FMC Devens in Massachusetts, and the U.S. Medical Center for Federal Prisoners in Springfield, Missouri. Further, because Mr. Dhanoolal is not a U.S. citizen there is a strong likelihood that BOP would sentence him to an Immigration and Customs Enforcement ("ICE") detention center. ICE centers are not equipped to care for or provide medical services to someone with Brendan Dhanoolal's multiple medical conditions.

    Interestingly, one of the three FMCs investigated as part of the OIG Audit was FMC Devens. Along with the problems identified above, the OIG Audit found that the BOP did not enforce contracts with third-party service providers to provide services that the FMC cannot perform onsite – such as transplants. As a result, clinics were routinely found to be understaffed and inmate medical treatment was routinely delayed. Meanwhile, the OIG Audit found the BOP did not take any steps to enforce the service contracts. While BOP officials told OIG auditors they had no concerns about the medical services provided to inmates there, the OIG Audit found the BOP had no methods of monitoring inmate medical care and, consequently, had no belief that BOP actually had any reasonable ability to determine whether inmates were receiving proper medical care. The OIG Audit notes that while the BOP claimed to have monitoring programs in place, the BOP provided no evidence of said programs or mechanisms to the OIG auditors.[9]

    Further, 

---

[7] *Legal Resource Guide to the Federal Bureau of Prisons*, U.S. Department of Justice, 2019. https://www.bop.gov/resources/pdfs/legal_guide_march_2019.pdf.

[8] *Id.*

[9] OIG Audit, *supra* note 3.

3

The Eighth Amendment to the United States Constitution requires the government to provide prisoners with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). It is considered "cruel and unusual punishment" for the government to ignore or interfere with this right – especially interfering with a physician's prescribed treatment for a prisoner with a serious condition. *Brown v. Plata*, 131 S.Ct. 1910, 1928 (2011). ▮

▮ and, likely, be a denial of his Eight Amendment rights under the *Estelle* test. Especially when it is well-accepted within the medical community that long-term dialysis is harmful to the patient's health and decreases the patient's life expectancy. "Most inmates routinely receive [dialysis] as opposed to transplantation, *resulting in inferior survival* and a significant financial burden to the state." (Emphasis added.) Gowda, *supra*, citing United States Renal Data System, *Chapter 9: Healthcare Expenditures in Persons with ESRD* (2018).

Given the nature of the extraordinary facts and circumstances of this case and the nature of the offenses for which Mr. Dhanoolal is being sentenced, incarceration is far greater than necessary, especially for behavior the United States admits is only "somewhat egregious." U.S. Sentencing Letter, page 2. ▮

▮ He is not a danger to society and is not being sentenced for murder, or drug trafficking, or some crime that will result in a decades-long or life sentence. The simple fact is, if sentenced to prison, Mr. Dhanoolal may spend his entire sentence in a hospital. It is not an exaggeration to say that, if sentenced to incarceration, his sentence could, effectively, be a life sentence (or death sentence, depending on perspective). While serious, no one should receive a death penalty for failing to file an FBAR or a federal income tax return. Indeed, that would grossly exceed any need or concern for the government's goal of deterrence.

## Federal Statistics Show Downward Departures Or Variances Are Applied in Over 78 Percent Of Tax Cases.

Issuing a non-custodial sentence to Mr. Dhanoolal is consistent with national sentencing practices. Sentencing trends as published by the U.S. Sentencing Commission in its 2021 Annual Report and Sourcebook of Federal Sentencing Statistics show a clear trend toward downward departures and variances. Table 32 shows sentences imposed relative to the guidelines range by the primary sentencing guideline. Here, the primary sentencing guideline is Section 2T1.1. According to the Statistics, in 2021, there were 232 defendants sentenced under Section 2T1.1. Of those 232 defendants, only 50 (or 21.55 percent) were sentenced within the Guidelines range. Of the remaining 78.45 percent of cases, 37 defendants (15.8 percent) received downward departures and 145 defendants (62.5 percent) received variances.

Further, the United States here claims that incarceration of a terminally ill man is necessary to provide deterrence to others. However, that argument conveniently ignores the extraordinary circumstances of this case and the severity of Mr. Dhanoolal's medical conditions. Likewise, that argument ignores that the U.S. Supreme Court and the Third Circuit have already

reviewed the matter and affirmatively held that non-custodial sentences are appropriate and constitute adequate deterrence. See, *Gall v. United States*, 552 U.S. 38 (2007) and *United States v. Tomko*, 562 F.3d 558, 563 (3d Cir. 2008) (en banc). In *Tomko*, the Third Circuit affirmed the district court's sentence of probation and home confinement to a defendant sentenced for tax evasion. The court held that probation with no incarceration was an appropriate sentence that served as adequate deterrence against future tax cheats. Further, the *Tomko* court cited to *United States v. Gardellini,* 545 F.3d 1089 (2008), relying on its holding that *Gall* requires that the sentencing court not give deterrence more weight than any other sentencing factor when sentencing a defendant. Rather, all of the Section 3553(a) Sentencing Factors must be considered.

      Therefore, Brendan Dhanoolal respectfully renews his motion for a non-custodial sentence given his serious life-threatening medical conditions.

Respectfully submitted,

BRENDAN DHANOOLAL

By his attorney,

*Kevin E. Thorn*
Kevin E. Thorn
Thorn Law Group, PLLC
1775 Eye Street, NW, Suite 1150
Washington, DC 20006
ket@thorntaxlaw.com
Tel: (202) 349-4033
Fax: (877) 854-7484